(No. 4716-)

JOHN LILLEY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed August 16, 1957.*

JAMES S. DIXON, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Claimant, John Lilley, filed his complaint for personal injuries, property damage, and the subrogation of Emmco Insurance Company with the Clerk of this Court on March 15, 1956.

The record consists of the following:

Complaint.
Departmental Report.
Briefs and arguments of claimant and respondent.
Report of Commissioner.

No answer having been filed by respondent, under the Rules of this Court a general traverse or denial of the facts set forth in the complaint shall be considered as filed. (Rule 11.)

At the hearing before the Commissioner, exhibit No. 1 was considered and admitted into evidence as a

joint exhibit. The exhibit was a drawing showing the location and elevation of Route No. 87 in Woodford County, Illinois, at the place where the accident occurred.

Under Rule 16 of this Court, the Report of the Division of Highways (page 1) was admitted in evidence, and stipulated to as being a true and correct statement of facts, which, in substance, sets forth weather conditions, location of the accident, with a designation of the station, as shown on the joint exhibit No. 1.

At or about 8:00 A.M. on March 22, 1955, claimant was the owner of a 1951 Chevrolet, which he was driving on said highway in a southerly direction, traveling in the southbound traffic lane. On the evening before it had snowed very hard, and on the morning of the accident the snow was blowing causing drifts to form on the highway, and it was blowing so hard that visibility was practically zero. The accident in question occurred about 3½ miles south of the Village of Spring Bay, and ¼ of a mile south of Bluff View School in Woodford County.

Claimant was traveling to his employment in East Peoria, Illinois from his home in Spring Bay. The highway not only was covered with snow, but was very slick; his speed was approximately fifteen to twenty miles per hour, and he was traveling with his headlights burning.

On the morning in question, respondent had in its employ three maintenance men, who were patrolling State Route No. 87 between East Peoria, Illinois and the Village of Spring Bay. They were Leslie W. Allen, John Garber and Paul Zelch. Just prior to the accident they were plowing snow with a State Highway truck loaded with cinders, and had a snowplow in front. They were plowing snow, and placing cinders on the highway. They

had traveled up an incline, and, when they reached the top, noticed several cars stuck in the snow on the highway.

Respondent's witnesses testified that, when the truck left Spring Bay that morning, the lights on the truck consisted of headlights, a blue blinker light on top of the cab, a tail light in the rear, and a large red light on the left hand corner of the box in front.

When they were advised that there were cars stalled on the highway in the southbound traffic lane, they stopped their truck on the highway, and sent Mr. Garber to the north to flag down traffic, and Mr. Zelch and Mr. Allen went to the south to assist in clearing the highway, and aid drivers in getting their cars through the snowbank.

It was impossible to pull over to the side of the road, because at the top of the incline the banks were steep on the right hand side. Before leaving the truck, they set its brakes. When the truck was stopped on the highway, the lights referred to were turned on and burning.

After assisting the drivers of the stalled cars to the south, they went back to the truck. Mr. Garber had gone back by the school house, and was visiting with a Mr. Meadows, who testified for claimant. Mr. Garber had stopped Mr. Meadows, who said that he could see about two or three car lengths ahead, when traffic approached from the south traveling north on the opposite side of the highway. Mr. Garber advised Mr. Meadows that the road must be open, and he got into the car with Mr. Meadows, and rode up to his truck.

There were no flares placed before or after the state truck. It does appear, however, that there were lights on the state truck, and, if it had not been for the poor visibility caused by the blowing of snow across the highway,

the truck would have been visible to oncoming traffic traveling in the same direction.

It appears from the record that, at the time of the accident, there were still a few cars stalled to the south of the state truck.

Claimant approached at a speed of approximately fifteen to twenty miles per hour. He testified that he could not see the truck standing on the highway. However, his witness, Mr. Meadows, testified that he could see the truck standing on the highway. He also could see cars approaching with lights on. When asked whether or not the truck had any lights burning, he testified that he did not know. Claimant testified that he never saw the truck at all.

Claimant's car ran into the truck, which caused it to run forward some eleven feet.

There was testimony that the automobile was a total wreck, and could not be repaired. Emmco Insurance Company was subrogated to the rights of claimant in the amount of $700.00. The car was salvaged for $132.50, leaving a net loss to Emmco Insurance Company of $567.50. Claimant's deductible was in the amount of $50.00.

The Bill of Particulars attached to the complaint sets forth doctor, hospital and ambulance bills in the sum of $124.00. There is testimony as to the personal injuries of claimant, for which claim is filed in the amount of $7,500.00.

In reading the record in this case, we are of the opinion that claimant has not maintained the burden of proof required, as there is no question but what the weather conditions and visibility were extremely poor. Claimant traveled into this area knowing the conditions at a speed of fifteen to twenty miles per hour. We are

cognizant of the fact that under normal conditions this would be a slow speed. However, under the facts in this case, we would consider the speed to be excessive in view of claimant's testimony that visibility was zero.

In the case of *Dirksmeyer* vs. *Barnes*, 2 Ill. App. (2d) 496, at page 506, the court, in quoting from the case of *Hicks* vs. *Swift & Co.*, 285 Ill. App. 1, had this to say:

"The reasonableness of the speed of appellant's car is not to be determined by the fact that he was driving at his usual speed, but is to be determined by the jury in the light of all the facts and circumstances in the case. The existence of a sudden emergency or imminent peril does not excuse the driver of the vehicle from using that degree of care and caution, which an ordinary prudent and careful person would have exercised under the like facts, circumstances and emergency, and whether such degree of care and caution was so exercised was for the jury to determine."

As to the negligence of respondent, we are taking into consideration the hazardous condition of the highway, and the duty of the state maintenance men to clear the highway and render it safe for travel by the public. Because of the fact that many cars were stalled, and the traffic lane in which the truck was parked and in which claimant was traveling was blocked, and only one lane of traffic was open at the time of the accident, it was the duty of respondent's agents to clear the highway, which they were attempting to do at the time. They did station a man to the north of the truck, who, at the time of the accident in question, was standing to the west of the state truck.

We are also taking into consideration the fact that claimant did not see the truck, and did not testify that there were no lights burning on the truck, as testified to by respondent's agents. Claimant's only other witness as to the occurrence did not testify that there were no lights burning on the truck, stating that "he did not know".

It is apparent from the record also that an emergency was created by the stalled cars, and the record is silent, except as to respondent's testimony, that the truck could not be parked on the shoulder on the west side of said highway, due to the steep embankment and the snow thereon.

As to the placing of flares along the highway, in considering the fact that claimant did not see the truck or any lights, certainly he would not have seen flares burning. These men were busy at the time in trying to warn traffic, and to remove stalled cars. We are of the opinion that it was not the negligence of respondent's agents in failing to place flares along the highway, if they had time to do so, which was the proximate cause of the accident in question.

It is the order of this Court that claimant's claim for his personal injuries, and the deductible portion of his policy in the amount of $50.00, and also the subrogation of Emmco Insurance Company, whose claim was presented by claimant, be, and they are hereby denied.